I wasn't hiding from you my computer. Good morning, Your Honors. May it please the Court, Craig Shagan together with Tracy Hubbard for the petitioner Mr. Ramiro Rojas. We would like to reserve seven minutes of our time if that's okay for rebuttal. This case presents a singular issue of interpretation of the phrase relating to a controlled substance as defined under the Controlled Substances Act. We believe that this phrase is reasonable of interpretation, and in fact the point which is at issue in our case is not ambiguous in the least, which is as defined under Section 102 of the Controlled Substances Act. Precisely, we think that to be deportable under 237A2BI, the government must prove two things. First, that the statute of conviction, as in the Boromo case, logically connects with the control of illicit substances generally. In other words, that the statute of conviction is one that is designed to control illicit substances. We do not dispute and have not disputed from the beginning that the Pennsylvania crime of paraphernalia in fact relates broadly to the issue or to the control of illicit substances. The next part of that test, the second part of that test that we would propose, is that you must show that the conviction is based on a illicit substance that is in fact a controlled substance under Section 102, a federal controlled substance under Section 102 of the United States Code, because to do otherwise would create a number of anomalies that we think would be against the intent of Congress as they wrote the statute. So first we would argue that the statute in this regard is plain. There is a definition there and that definition is to be given meaning. Secondly, we would point out that that definition is actually needed because the states and foreign countries, which you can also be convicted of a crime relating to a controlled substance under a law of a foreign country, must have some anchor. It must have some base. It must be uniform. Or otherwise you're going to have 50 different states plus all the countries in the world with different lists of controlled substances. So it has to be connected to something. And that's something that Congress chose was perfectly rational. It's Section 102 of the Controlled Substances Act. This is also a position that we believe the BIA agrees with. We're in the ironic position of being a petitioner in a case where in fact the BIA has held our way publicly. And indeed the same individual board member who ruled against us in our case before the BIA, and it was an individual board member that wrote the decision, in another case, Matter of Gull, said exactly what we're arguing and indeed ruled our way, although he found Mr. Gull removable for other reasons. So with respect to the BIA, both in Matter of Paulus and in the Matter of Gull at the BIA level, it would seem that we were on solid ground. When we look to the circuit court cases across the country, we don't see any that are against us. Indeed, some of the arguments, or some of the cases cited by the Attorney General in their argument, we agree with. And particularly we would look to Desai v. Mukasey, which is a case very similar to this, from the Seventh Circuit. And in that case, the court held that the lookalike substance of psilocybin was a crime relating to a controlled substance. We would agree. Why? Because psilocybin is a controlled substance under Section 102 of the Controlled Substances Act. And indeed, when they're discussing this, they say, as we held recently in Escobar, the parenthetical referring to Section 1 as defined under Section 102 of the Controlled Substances Act can only be read to modify controlled substances. It's immediate antecedent. That's what we're arguing. Finally, any other decision, such as suggesting that close enough is good enough, if the lists are close enough, then it's okay, ignores the fact that if you don't actually prove what that substance is, over time these things will change. These are dynamic statutes. Most recently the states added a number of offenses regarding various kinds of synthetic cannabinoids, which it took the federal government almost a year or so to correspond to. And even then, not precisely. If you agree that Rojas was convicted of a controlled substance, or convicted of an offense relating to a controlled substance, you'll agree with me. Judge McKee, I can't hear what you're saying. Well, I guess, again, that wasn't me. That was just Fuentes. Oh, I'm sorry. Okay. Let me get closer to the microphone. Are we at the point where we can ask questions now? Yes. I'll yield to Judge Greenberg. You have the floor, Judge Greenberg. Go ahead. I wanted to ask Mr. Shagrin this point. Are you familiar with the rule of the last antecedent? No, Your Honor. All right. We defined it in a case called Disabled in Action v. SEPTA, and it's at 539 Fedster and 199. And it says the rule in footnote 13, the rule of the last antecedent is a principle of statutory interpretation under which a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows. Now, if you look at the statute, you'll notice that the relating to a controlled substance as defined in Section 802 immediately follows law or regulation. It does not follow conviction. So if you're convicted of a violation of a law that no matter what you did, if the law related to a controlled substance and that would cover this case, because it certainly does relate to controlled substances, then you can be deportable. And as a matter of fact, very unkindly, I thought, a bankruptcy court in New York in the case of In re Enron creditors, 380 Bankruptcy Report 307 said, not too kindly, twice in the last century the United States Supreme Court has reversed the Third Circuit for falling into the same grammatical trap. And the trap was it didn't apply the rule of the last antecedent. So it's perfectly clear, it seems to me, that the modification is of law or regulation and not conviction. So we've already been hit for a quinella by the Supreme Court. You want us to go for a trifecta? Well, Your Honor, if I may respond, I think if you were to take what you're saying literally then, categorically you could have no conviction under the Pennsylvania Paraphernalia Statute that would qualify because categorically the Pennsylvania controlled substances are not the federal controlled substances. We wouldn't go that far. Because the Pennsylvania statute, in fact, does relate to controlled substances. It might relate as defined in federal law. It might relate to something more, but it surely relates to controlled substances as defined in federal law. No, no. It relates to controlled substances as defined under Pennsylvania law, which may or may not be. Any law or regulation. No, no. Which probably relates to federal law. Overwhelmingly probably, but not certainly. Overwhelmingly there is a similarity between the substances listed. But from a legal point of view, they're created by two separate bodies and there's nothing connected to them. I'm not suggesting that the court take that view, that just because Pennsylvania is not identical to the federals, that therefore we throw out all of the, that a conviction under a Pennsylvania paraphernalia statute may not be a conviction that relates to a controlled substance. But the law itself is relating only generally to the control of illicit substances. And to go so far as to say, we're now not going to pay attention to what a state lists as a controlled substance, and we're going to make you deportable for that, subjects you to 50 different jurisdictions in the United States, not to mention that in a foreign country, they could have a completely different set of controlled substances. Isn't that what Congress chose? No. Congress chose that possibility. And in fact, Justice Sotomayor in the Moncrief case even referenced that in response to something Justice Alito wrote. Well, I'm at a loss on that one because as I understand it, the idea of uniformity of deportable offense is something that is baked into the DNA of the Immigration Act. Texas should not be deporting people for offenses different than offenses in Pennsylvania. And I would think Congress would intend to have uniformity as to what would constitute a deportable offense. Convictions of laws, convictions under laws. Do you agree that that's where we look first? Well, I'm not sure I understand what Your Honor means. Well, first of all, where do we go first under this statute? Isn't it, don't you, do you agree that the first place we look is the law under which, in this case, Mr. Rojas was convicted? Yes, I would go with the two protests. First, you look at the law and you ask, the court would ask the question, is this law generally related to the control of illicit substances? Then what do you need, what do you say you need to do second? The second, you must show that the conviction on which the non-citizen, the offense for which the non-citizen was convicted of must be based on a conviction in which the substance was a controlled substance under federal law. Where does the statute say that? Well, the statute says that any alien who at any time after admission has been convicted. And then as the remainder of that phrase is, of a violation of any law or regulation of any state, the United States, which of course here would not be at issue, or a foreign country. If we're taking Judge Greenberg's interpretation, why would the parenthetical as defined in Section 102 need to apply to the United States? It doesn't. It needs to apply to the conviction because that's what's uncertain. What's uncertain is what was this person convicted of? If he was convicted of poppy seeds in the United Arab Emirates, that's a completely different proposition than being convicted of cocaine in Pennsylvania. Just to clarify, the phrase, the parenthetical, as defined in Section 802, the immediate antecedent, speaking of antecedents, is controlled substance. Correct. So the controlled substance has to be in 802. Is that your interpretation? That is. And that's the Seventh Circuit's interpretation in Desai. That's exactly what they said. It can't be jelly beans. It has to be a substance that is listed in the federal substance. And let me point out, and I think this is an extremely important point to make. In a properly prosecuted case, this is not an issue. In a properly prosecuted case, you're supposed to in Pennsylvania say what that substance is. Well, then let me ask you this question. You're saying, so what should we do then? Remand the matter and find out what it was? No. We, in fact, they did not prove their case. In matter of gull, this Court didn't send the case back to be, you know, to give Mr. Gull a second bite at the apple. We've raised this issue from the beginning. The government has known about this issue and said it did not matter. We know from the record what the substance was. No, we do not know what the substance was. We don't know what the substance was. You argued for the modified categorical approach, and they argued for the categorical approach, and they won that. So if we agree with you that the modified categorical approach should be applied, then remand is required for that to be done. Well, I'm sorry, I'm missing a big point here, because we raised the issue at the immigration court level. The government could not prove their case and said it didn't matter. And then it goes all the way up here, and now we're being told we'll go back and we'll give them a second chance to show it. Isn't it true the agency applied the categorical approach? That's what they're arguing here. The agency. Well, what did the agency do? Did it apply the modified categorical approach or the categorical approach? Well, actually, at the immigration court level, I don't think they thought about it all this carefully. I think what they said is it doesn't matter. And then it went up to the BIA. But all along we're arguing this. So if the BIA disagreed with us. No, but I'm asking you. I just read the opinion again yesterday. I understood the BIA's opinion, correct me if I'm wrong. Yeah, that's correct. To apply the categorical approach. That is correct, yes. And you, speaking only for myself, fairly persuasively argue why it should have been the modified categorical approach. Well, thank you, Your Honor. Don't thank him yet, because the way he's doing, you lose. There's a caveat. Now, if I'm not alone in that, the case has to go back down. Why would it have to go back down if they had the opportunity to prove their case, and they did not? And Gold didn't have a chance to go back down and prove that the substance in Gold was, in fact, you know, one of the ones. I mean, the burden was switched in the Gold case, as you know. And he didn't get a second shot at it. Let me suggest to you maybe a reason why it should be remanded. So if the categorical, modified categorical, is in your mind resolved, and at least one other panelist thinks that it's the modified categorical, which I happen to as well, then isn't the thing that has to be done, you've got to send it back because there is, and I think Judge Fuentes was alluding to this, there is a document that at least alludes to marijuana. Okay. The criminal complaint, right? Right. And there's an argument, I presume, that it wasn't either properly digested, properly looked at, or properly considered. Okay. So don't we have to remand so that it can be properly considered? Because it certainly would seem to be a question of fact that can be resolved in the first instance by the IJ, and then the BIA can review whatever determination is made at that point. Judge Greenaway, I would respectfully say no for this reason. We know what the record of criminal conviction is here. We have it. What we have is a police complaint, a police complaint that was not signed by a district attorney. It was issued seven months after the alleged event. Our client, I mean, essentially what happened here was our client received a summons in November. He shows up at a district magistrate's office, and as you know in Pennsylvania district magistrates don't even necessarily have to be lawyers. He pleads guilty on a plea colloquy that, you know, wouldn't pass law school muster. Is it up to us to throw that out? Yes. Yes, because in an immigration case, unlike in a criminal case, what does it mean when you have a record of criminal conviction that's reliable versus not reliable? We are not allowed to introduce evidence in the immigration court contradicting the conviction. All we can do is say, okay, this is the record of conviction. It's the real record. You know, it shows that he pled guilty or he shows he's guilty of X. We can't say that this was a plea of convenience. We can't say that, you know, they never really had their evidence, so he did this to pay the $100 fine and walk out of the room. All we can do is say this is what's in the record of criminal conviction, and in this case it doesn't show anything more than X. What does this record of criminal conviction show other than that he pleaded guilty to a paraphernalia statute? Well, it says more than that, doesn't it? I don't think so. Well, there are two cases. The first one was a marijuana case. It's not involved. There's less than the first one. Correct. The second one does appear just to be paraphernalia, maybe cigarette rolling paper, maybe something. We don't know. We don't even know what the paraphernalia is. We don't know. Well, the report says a plastic baggie and a cigar paper. Great. And I agree with that, Your Honor. Report. And a report is not a record of criminal conviction. As we all know from private practice or from anybody who's practiced any kind of criminal law, what goes into a police report, part of it may be right, part of it may be wrong. As it gets willowed into trial, you begin to see what the real evidence is. You've seen the report. Yeah. Well, I've seen it. There is a police criminal complaint, but a police criminal complaint is not necessarily part of the record of criminal conviction. And look at the affidavit of probable cause here. It involved a woman who had a DUI. I mean, I don't know what was going on in this magistrate's office. Well, let's assume you're right. If that's true, isn't the correct thing, since we're dealing with what you're saying is a mistake of law, you're saying they applied the categorical approach, this requires the application of the modified categorical approach because Pennsylvania's law doesn't line up precisely with the federal law. Isn't that classically the kind of mistake that's got to go back so that the lower tribunal can actually apply the correct law? And then we leave it to them in the first instance to go through everything you've just gone through and say, well, you can't look at that because it's not a Shepard document. You can't look at this. You can only look at that. That's for the BIA or the immigration judge on further remand to do in the first instance, right? For example, you can't look at the criminal complaint would be your argument. That is correct. And in this case, you know, under Garcia, where their police criminal complaint was introduced only because it had, you know, the extra indicia of reliability, which this does not have. So are you agreeing it's got to go back for those folks to do that in the first instance, right? But that seems to me almost like a mandamus. I mean, what could they possibly decide other than to dismiss? I mean, what else is there for them to decide here? They can't say. Doesn't your disagreement with what you've been asked typify the incongruity here in your argument? I mean, Barome, does Barome help you or hurt you? Barome does neither. Barome, I would agree with the holding of Barome. That's part one. We can see that part. One of the parts of Barome that I think hurts you and does away with this argument or this debate we've had here with the panel is that Barome says you should use a formal categorical approach. Well, as to the first part of the two-prong test, does the statute logically relate to a crime that seeks to or logically relate to a law that seeks to control illicit substances, I would say yes. To that you apply the categorical approach. Formal categorical approach. To that prong, yes. And in Barome they looked at the law and they said the law, which was the federal drug control law, may have the wrong name, is not similar enough to the CSA. It was not. The purpose of that law was not to regulate illicit substances, and so therefore categorically it would be, and I think the Court used that example, if I was receiving stolen property. End of the case. Well, in that case it was, but in that case you also had OxyContin, which was a federal controlled substance. So it wasn't an issue in that case. It seems to me this is a categorical approach, modified categorical approach. It seems to be a very, very simple question of statutory interpretation. You've got to have something relating to a controlled substance. What's a controlled substance? Is it jelly beans you've alluded to from, I guess, the DL case? To find out what is a controlled substance, Congress has said take the definitions from Section 802, Title 21. Is the thing that this guy possessed defined as a controlled substance, using that definition of a controlled substance? Why isn't that the end of it? I agree. It's very simple. Why get into all this? I don't know. I don't know why. I mean, you know, we thought this one was going to be one at the IJ level. I mean, in other words, it's there or it ain't there. And marijuana is there in 802. But your point, if I'm not mistaken, is that it wasn't proven. That's correct. It's not in the record of criminal conviction. The paraphernalia is not there. Talking about the modified categorical approach, I can't disagree with Judge McKay. I mean, what use does it have when you've already conceded all of this? The only question is, is marijuana in 802? Yes. Was it proven? No. Is that it? Yeah, that's right. It was approved. But the question is, why doesn't the case get sent back and give them another chance to prove it? Well, because we don't – why should the government have multiple chances to prove what they couldn't prove the first time? After this issue, we didn't sneak this issue in on them. This was day one. This was raised. I mean, they had all the opportunity in the world. Evidence just isn't there. Thank you, Mr. Shiggin. Your light's out. Judge Greenberg or Judge Vandell, anything else you want to ask? No, I don't have anything. I don't have anything. Thank you. You save some time. Thank you. May it please the Court. Carol Federighi on behalf of the respondent, the Attorney General. Your Honors, the issue in this case is whether Mr. Rojas' Pennsylvania conviction for possession of drug paraphernalia is a conviction under a state law relating to a controlled substance, as defined in the Controlled Substances Act. Because this provision of the Immigration and Nationality Act refers to the state law under which Mr. Rojas was convicted, the Court and the Board applied the categorical approach to analyzing the nature of Mr. Rojas' conviction. Under the categorical approach, we compare the state statute of conviction to the federal enumerating definition without reference to Mr. Rojas' actual conduct. Now, as we've talked about, here the federal definition uses the phrase relating to. In a wide variety of cases, this Court has recognized that the phrase relating to must have an expansive meaning and must be interpreted to encompass any offense that is associated with or has some logical connection to the elements of the federal definition. The Court has rejected the idea that there must be an exact match between the elements of the state statute of conviction and the federal definition. In Dennis, the Court said that relating to does not demand a precise degree of similarity. The Court said that unless the words relating to are of no effect, they must be construed to encompass crimes other than those specifically listed in the federal statute. Now, the provision at issue here references state laws relating to federally controlled substances. The legislative history of this provision reveals that in 1986, Congress replaced a more specific list of activities that were related to drugs with this relating to language, and that this indicated a congressional intent to expand the drug offenses that were going to be grounds for deportation. Basically, Congress concluded that any offense that was related in any way to federally controlled substance should make someone deportable, recognizing that such individuals should not be given the privilege of living in the United States. Now, here we're looking at a drug paraphernalia statute, which is distinct from a simple possession statute. As opposed to simple possession, a drug paraphernalia statute is addressed to the actual use, consumption, or manufacture of controlled substances. In order to use, manufacture, or in any way handle a controlled substance, you need to use items of paraphernalia. Even consumption of drugs requires some form of paraphernalia to introduce the substance into your body. Paraphernalia statutes criminalize the possession of these items in order to put additional barriers in the way of drug use and to hopefully prevent or reduce drug use. The paraphernalia statutes are intended to control the use of federally controlled substances as well as any anonymously state-only controlled substances. The focus of a paraphernalia statute is on the items of paraphernalia, not the particular substance. The items that are criminalized can be and are used with any types of drugs, and in most cases they will be used with federally controlled substances. Using this expansive meaning of relating to and recognizing that the paraphernalia statute at issue focuses on items that are not drug specific, the board properly concluded that Pennsylvania's drug paraphernalia statute is categorically a state law relating to a federally controlled substance. This conclusion is consistent with the conclusion of two other circuits, the 9th and the 11th, and no circuit is held to the contrary. The conclusion is also consistent with this court's holding in Barome. In Barome, the court reiterated its prior Dennis reasoning that you don't need to have a match between elements of the state statute and the federal definition when the word relating to is used. Instead, the court looked at the connection or relationship between the two statutes. In that case, it was the Federal Food, Drug, and Cosmetic Act, which I'll just call the Prescription Drug Act, and the Federal Controlled Substances Act. The court concluded that the two statutes were not sufficiently connected or generalized a broad swath or wide range of activities that were of no concern to federal controlled substances, and that any overlap in substances between the two acts was merely coincidence. And the fact that a substance might have been a controlled substance was actually not relevant to its treatment under the Prescription Drug Act. Doesn't your, the way you construe this statute, aren't you basically, aren't you basically reading out of the statute the parenthetical? No, I'm allowing that parenthetical in there. And as I said, drug paraphernalia statutes are mainly designed to control the use of federally controlled substances. Therefore, those statutes are related to. It doesn't really have meaning, though, the way you're reading it, does it? I'm using, again, the words relating to broaden out the scope of the statute. That's what I call a cob pipe. You're assuming that they were trying to reach anything which is so endemic to the consumption of an illegal substance that they can criminalize that, too, and therefore, that approach works and it's got to be read very broadly. But what you said earlier is just not true. You can ingest drugs without having paraphernalia. You snort cocaine, you snort heroin. You can ingest, get secondary inhalation of marijuana, which is not obviously the intended way of getting into your body. But you don't have to have a prohibited item to get the drug into your body. That may be true in specific cases. I think for snorting, you need some sort of straw. You need a nose. Dollar bill. I'm not familiar with ingestion of drugs, personally. It may be true that some drugs can be ingested without paraphernalia. But what the state legislatures have realized is that paraphernalia is, in most cases, an essential item to actually use the drug. What if it's an asthma inhaler? Is that drug paraphernalia? No, because it's not related to a federally- Okay, then what if the inhaler is used to inhale propyl hexadrine? Then it would be that it would fit within the Pennsylvania Paraphernalia Act. Where does propyl hexadrine appear on the federal schedule? It's not on the federal schedule at the time. If we assume that Mr. Rojas, the paraphernalia that he was using that got him convicted as a propyl hexadrine inhaler, he violated a state drug statute but not a federal drug statute. The inhaler, the assumption is the inhaler could be used to ingest other drugs that are federally- But on my hypothesis, we don't know exactly what he did. That's not in the record, correct? There is a police complaint which, as Your Honors have discussed, may or may not be reliable in this case. But the board decided the case just based on the categorical offense and not the- Right, so then I think you have to grant my assumption, assume it was a propyl hexadrine inhaler. How can this be a removable offense if it was a propyl hexadrine inhaler? He hasn't done anything contrary to federal law? Because the inhaler, once it becomes used for illegal substances, could be used for any other illegal federal- It's a good point. Another chemical is dextrofen, which is used in cough suppressants, which Pennsylvania puts on the dangerous substances list, or controlled substances list. But your argument suggests that now judges would be looking at these wrongful chemicals to see if they're like something in Section 802. Is that your argument? No, no, we're not- Because your answer to Judge Hardiman was pretty much, well, it can be used for this or it could be used for that. So you're essentially asking judges and courts to make these now comparisons. Isn't it simpler to just look at 802, it's there or it ain't there? I'm going to have to get all fancy about it. Just read the language. Well, I agree with just read the language, but I would do it at a higher level of generality. Because the statute at issue, the Pennsylvania Drug Paraphernalia Statute, criminalizes the use of items that are used with federally controlled substances as well as these few anomalous state controlled substances. But what is the purpose of the parenthetical? Isn't the parenthetical a limiting term in defining? You're reading it out of the statute, are you not? No, because I'm saying the state statute is primarily designed to regulate the use of federally controlled substances. That's not what the statute says. It says controlled substance as defined. I mean, if the state statute is a total match with the federal, then it would seem to work. But if the state statute criminalizes two times as many things as the federal, then where does the parenthetical fit in that analysis? The analysis is that I think you need to follow the analysis of Barome and compare the two statutes, the federal scheme and the state scheme. Barome never mentioned the parenthetical. Is that correct? I'm not sure of that. I don't believe it was ever mentioned. It is not mentioned in Barome. Following Judge Rendell's point, was it necessary for the immigration judge to use a modified categorical approach when, as Judge Rendell has just suggested, you just do a match, the state versus the federal, and see if it's in 802? What was the point of using the modified categorical approach by the IJ? I don't think the IJ used the modified categorical approach. It used the categorical approach. All right, let's say that. Though it was a little, it was not as specific. The board did use the categorical approach and said the statute as a whole, the Pennsylvania statute, is designed to control the use of federally controlled substances as well as state controlled substances. In this case, if you want to do the Barome comparison. Is it necessary to do that when all you're doing is matching the state offense to see if there is an analog in Section 802? There is, we're saying that there is no need to show an analog in 102. 802. 802. If you can show, as in this case, that the state controls most, controls all the federal substances and only has a few anomalous ones that it controls separately. But we're talking about not scouring through the state law and the federal schedules to determine whether or not there is a match. But you're suggesting that we do have to scour through it. Why not just look at the language? Just see whether or not the substance involved has been defined as Congress, as something that Congress is going to allow the executive to remove or deport a person for possessing. Come down to that. Because the statute as written draws the line in a different place. But it also has a parenthetical that you want me to ignore. It says Rendell suggested. The state statutes, all of the federal, all of the state controlled substance statutes are designed to work in tandem with, and in most cases they do mirror, the federal controlled, the schedules of controlled substances mirror each other. They don't precisely mirror. They do not. That's the point that you keep getting pushed back to again and again. Look, the Supreme Court a month ago, in Moncrief, in the majority opinion laid heavy, heavy emphasis on the categorical nature of the inquiry. It's called the categorical approach for a reason. This idea that the drug offense must meet two conditions. It must necessarily proscribe the conduct that is an offense under the CSA, and the CSA must necessarily prescribe felony punishment. So looking at that first piece of it, it must necessarily proscribe. That, I think, is the hypothetical that Judge Hardiman is putting to you. If you are in a circumstance where it does not, quote, necessarily, unquote, proscribe that behavior, aren't you outside, then, of a prohibition under the CSA, and therefore the categorical approach says the person goes, they walk? How do you deal with Moncrief? Because the categorical approach is slightly different in the context of a relating to statute because the relating to language broadens out the inquiry, and you no longer have to have an exact match between elements of the state statute and the federal offense. How do we get to a, quote, relating to statute? We're talking about a conviction for an offense, right? And your assertion is he's deportable because that conviction is for an offense that's relating to a drug crime. You've got to link it back up, right? No? Yes, I'm saying because the way the federal drug system works is the federal government has set out its Controlled Substances Act, but it allows the states to regulate drugs as well. And the categorical approach isn't really the categorical approach because it's only categorical the way the Supreme Court told us a month ago in Moncrief when you're talking about a conviction that's really obviously for drugs, but when it's for paraphernalia, then you're off of the categorical approach and you've got some new kind of approach? No, it's different when the statute, when the INA provision includes this relating to. The courts, this court in Park, Dennis, Drakes, and also Barome has said relating to broadens out the category of offense. But help me out. We're talking about a Supreme Court case a month ago. It's applying the very same statute. No, it's not. It's the aggravated felony provision for illicit trafficking, and there's no relating to language in that statute. But the relating to only gets you... The relating to only gets you so far. It gets you to drug paraphernalia. It gets you to transportation. It gets relating to controlled substance, paraphernalia, anything having to do with controlled substance. But when controlled substance, then it's modified specifically by as defined. It doesn't say controlled substance or something relating there to. It says controlled substance as defined. So you're reading your relating to to carry a little bit more water than it actually does under the plain language of the statute. The law, again, the law, Pennsylvania law here, was designed to regulate the use of federally controlled substances as well as additional substances. But because the law only needs to relate to federally controlled substances, it's okay that it's a little bit overbroad. That's what the court held in Drake's. In Drake's, it found the statute overbroad, but the bill said it was related to forgery. Let's get to something we maybe all understand. Jelly beans. Okay. Let's suppose the Pennsylvania legislature said jelly beans are bad, and they passed this statute. Yeah, right, large sodas. Jelly beans are bad, and they passed a statute, a specific freestanding statute that says jelly beans are a controlled substance, as we define controlled substance under this law, and therefore they're illegal. Okay? And Rojas got convicted, unfortunately, in Pennsylvania of eating a jelly bean, too many jelly beans. Could he be deportable under that statute? That would be – the board hasn't addressed that situation. Yes or no? But I would say it's different, because jelly beans wouldn't meet the federal criteria for controlled substances. Why not? Because there's lists of how it has to be subject to abuse, like physical dependence, et cetera, to meet those schedules. Purple hexadrine doesn't meet it either. Pennsylvania has the same criteria for things it puts on the list. Well, let me help you out here a little bit. This is really the real difference, though, is if Pennsylvania had said instead of a freestanding statute, we're going to put in our Controlled Substance, Drug, Device, and Cosmetic Act, which is the name of the Pennsylvania statute, we're going to put in a section that says that jelly beans are controlled substances. And Rojas got convicted under that statute. Now what would you say? Is that a statute relating to controlled substances? I would say no, because it's not designed to control the use of federally controlled substances. No, we have drug paraphernalia statute addressed – Which is a subsection of that statute. Right, but it's – Subsection of that very same statute. Correct. But it's addressed to paraphernalia that's used with items that are on the Pennsylvania list schedules. Those schedules have the same criteria for inclusion that the federal schedules do. In fact, they are mostly contained in the same elements. How did you get – if you said jelly beans no under my second example, how did you get to the actual conviction to make a determination that this substance he was convicted of didn't come under the federal statute? How did you get there? Did you get there under your opponent's strategy, the two-step? He was convicted under a different provision, not the Possession of Controlled Substances provision. Let me ask you this question about the modified categorical approach. I don't know how you – If it's a jelly bean dispenser, he loses. But if it's the jelly beans he wins, that can't be the one. No. Well, that is exactly the result. Well, let me ask you about the modified categorical approach for a second. Okay. Go ahead, Joe. Go ahead. Let's assume for a moment that you're losing on this categorical approach and my colleagues are not going for it. So assume. I have no idea. Good assumption. Somehow I intuited that. So the modified categorical approach, your colleagues, your adversary, whatever, says that if we apply it, that's the end. He wins. We go home. Some of my colleagues and I have suggested that no, it would be remanded and that one of the things that could be taken into account upon remand ultimately to the IJ is the police criminal complaint. In that scenario – well, first of all, do you agree with that scenario? Second, do you think that it has to be remanded? And if so, may we order or suggest that the police criminal complaint be taken into account this time? Yes, I would agree that if the categorical approach is not the way to go here, that it should be remanded for application of the modified categorical approach. At the time it issued its decision, the board had a binding published precedent, the Espinoza case, holding that drug paraphernalia was categorically a law relating to a controlled substance. So you would basically be overturning that board precedent, and since the board at the time it issued its decision felt constrained by that precedent, it should be remanded for the board to reconsider the case and probably remand to the immigration judge as well. Is there a reason why the government did not present that evidence in the immigration proceedings? I don't know. I don't know. I mean, the police report was there. Yes. And the IJ chose to use the plea of guilty and only the plea of guilty to make his or her decision. Yes. Is that fairly accurate? Yes. But the government had the information that the paraphernalia was presumably related to marijuana, is that correct? Yes. And I don't recall what the government said in its brief, but the brief is in the record. No, it's not that simple, though, because for marijuana to fall under the Controlled Substances Act, it has to be 30 or more grams. So if you've got whatever it was, and my colleague suggested it was a baggie, so I hope nobody goes into my briefcase and checks when I bring to lunch my peanut butter and jelly sandwiches in, drug paraphernalia, put it in a baggie. But then don't we get into the complication of whether or not the baggie was intended to possess or did contain more? How can we do that? More than 30 grams of marijuana? Because the very fact it's a baggie doesn't make it relating to drug paraphernalia unless the baggie contains 30 or more grams. And if the 30 or more grams of marijuana were in there, I would assume he would have gotten hit with the 30 or more. He may have been fled down. But I don't know if any of that is in the complaint. Why should we get into this morass? Basically, the expression that I've used that I borrowed from Judge Garth, where the court is being put in position of the circus hand with a shovel who follows along behind the elephant. Isn't that what you're asking us to do by remanding it and giving the government a second bite of the apple? Put the shovel in the government's hand and clean it up? There's a couple things in that. First, if this were his only conviction, then the government would have had to show evidence that it was more than 30 grams for personal use. But because he had a prior conviction, it didn't matter how much. If it was marijuana, it wouldn't matter how much. I don't follow that at all because the prior conviction was not for a qualifying offense. It was for an offense that would meet the exception, but you're only allowed one exception. So by the time he got to the second offense, it wouldn't matter how much marijuana it was. So then the paraphernalia thing would have been irrelevant anyhow. Well, the drug offense was paraphernalia. Yeah, but there's two different offenses, right? Yes, at two different times. Okay, there's a month apart. So the fact that he already had a prior conviction on a separate occasion for marijuana meant that this conviction, it doesn't matter if it was marijuana or not. It wouldn't render him removable. As far as the remand goes in the police report, the immigration judge should have the first opportunity to determine the reliability of that police report. Well, no, it was never introduced. It wasn't introduced, that's correct. Is that one of the Shepard documents anyway? If it was the charging complaint and he pled guilty to a charge in the complaint as charged, it would be a Shepard document. It's not clear to me exactly how Pennsylvania links up the charging complaint with the conviction. The police report is not a Shepard document. The police report isn't, but it's not. In this case, it's linked together with a charging document, I think, under Pennsylvania law, but this would be something the immigration judge could address on remand. Can I ask you, how does the government's position here reconcile with its position in Gall and the BIA's decision in Gall where it was clear that both the government and the BIA said the drug at issue must be listed in the Controlled Substances Act, giving life to the parenthetical we've been talking about? I don't know what the government argued, but the board, it's true, the board's decision in that case is inconsistent with its decision here. It was an unpublished decision. Unfortunately, there are unpublished decisions that, you know, the board does issue on contradictory, yes. All the courts, the unpublished decisions are not presidential. But I understand that, but the government argued, advocated, that you need to show, among other things, that the substance at issue was listed in Section 802. And then when Mr. Gall wasn't able to show that, he was deported because of the circumstance that brought him before the court. In that case, he had the burden of proof. So why is it okay for him to have that obligation, but you should have a broader, on behalf of the government, a broader latitude when it is you're looking for movability as opposed to finding information? Isn't that why the government generally asks for remand on its own? You don't get an answer to Judge Schwartz's question. Well, I think I can't say it would play out like this generally, but if the government had the burden to show removability and the non-citizen was able to show that the substance involved was not a controlled substance, then it might be that he would not be found removable. But don't you have the burden here? Yes, that's what I'm saying. Even though we have the burden, all we have to do is show there is a conviction under statute relating to federally controlled substance. I think if he came back with evidence to show, no, no, no, he had jelly beans, he would be found not removable. So that would reconcile the two cases. Can I get you to help me one more time? Go ahead and ask your question. You've indicated that you think that under 1227A2A3, which is a statute at issue in mine brief, and the one we're dealing with here, 1227A2B1, that there's something different about the categorical approach. And I'd like you to explain that, because I always understood the categorical approach to be just that. If the government thinks it means something different under B1 than under A3, I would really like to hear what it is. Well, I would look at the Drake's case. In that case, the court did start out by talking about the categorical approach and talking about that you have to find the least culpable conduct and determine if that meets the federal definition. But then it went on to find that actually, in that case, the statute was whether the law was relating to forgery. So it had the relating to language that is not present in Moncrief, but is present in this case. So it starts out with, like, we have to analyze this like Moncrief and use the least culpable conduct. But then it starts discussing the relating to language, and by the end it recognizes that the statute under which Drake's was convicted is overbroad in that it includes conduct that would not be forgery, as the common law or federal definition of forgery is. But it says it's still a law relating to forgery. Then aren't you really saying we're no longer talking about the categorical approach? Yes. It's a modified categorical approach. No, I won't call it modified. It's a broader version of the categorical approach because you don't have, as I said, you don't match up elements. So the fact that there's an element in the federal definition, like here a controlled substance, it doesn't mean that's required to be in the state statute, as long as there's some connection between the two. I'm just wondering how you can call that the categorical approach. It's either categorical or modified. Well, if you just read the language. Yeah, the courts haven't come up with a new term for that analysis, but if you look at the Drake's analysis, the Barome analysis, the Dennis analysis, the court isn't matching elements like you do in a pure categorical approach because it says with the relating to language you don't have to match elements. In Dennis, the court also said you didn't have to have a critical element requirement. But this is different. But in that case, wouldn't it be different? It said relating to forgery perens as defined under federal law and perens. I mean, here we have a different situation, do we not? Because of the parenthetical. In Drake's, the court actually did analyze federal forgery law and determined that this offense wasn't. But the statute didn't say after the word forgery perens as defined under federal law and perens. No, it did not. Here the statute says as defined under federal law and perens. Well, Mr. Shagan's point that if we ignore the parenthetical, which you're saying your argument doesn't do, but the result of your argument is that we get different removable offenses based upon the state you're in. So somebody can have a baggie in Texas and they're gone. You have the same baggie in Pennsylvania and you can put your sandwich in there and bring it to lunch and eat it. And so you get the scheme where there are basically 50 different schemes of offenses that are removable. That's the natural result of your argument because there's no uniformity anymore, which is the natural result of reading out of a definitional statute the thing which forces you to use federal law to define the removable offense. Does that make sense that Congress would intend to do that? I would disagree with the conclusion that my reading leads to non-uniformity. It's a state law that controls them, right? Under your reading it's state law that controls them. Under any reading because Congress specifically said convictions under state law would make someone removable. And not every state has the same laws. Conviction of what? Conviction of what under state law? A law relating to a federally controlled substance. As defined how? In the CSA it said that. Okay, so the federal laws, what is the definition of federal? But then it recognized that the states are all regulating basically the same substances but with different laws. Not every state. And foreign countries too? And foreign countries as well. So when you're convicted in Dubai of importing poppy seeds. I was speaking against the ruler in Iran. I'm out of time but I'd just like to make one general comment that what I'm trying to get at is people who are unable to abide by laws regulating drug use should not be allowed to live in the U.S. Even if it's poppy seeds in Dubai, if they were unable to abide by the law that made that illegal in Dubai, I would argue that those people also as well should not have. Or jelly beans in Pennsylvania. Or jelly beans in Pennsylvania. Thank you. Anything else, Judge Lindell or Judge Greenberg, anything else? Nothing else. Thank you. Thank you. I'll be brief, Your Honors. As to the record of criminal conviction, the regulations do provide what should be in the record of criminal conviction. And that's at 8 CFR 1003.41. It does not include police reports or police complaints. So it is not a listed item that would be included in the record of criminal conviction. Didn't the criminal complaint here actually relate to an unrelated incident? Correct, Your Honor. It related to, although it was under our client's name, the reference was to a woman who had a DUI. It was completely unrelated. And it was prepared seven months after? It was filed seven months after the alleged incident, yes. And it was not signed by a district attorney. I would hope a district attorney would not sign such a document. So it had absolutely no indicia of reliability whatsoever. Any of the facts that were reflected in it untrue? I mean, I understand. How do you know that? Well, I don't know that. But I can say that it has no reliability to it. And it could not be admitted. I mean, the judge, the IJ, saw it. By the way, the record of criminal conviction didn't, or the submission of the government's evidence, didn't include the police criminal complaint. It was argued by my colleague at the hearing that that was not reliable, and apparently the immigration judge accepted that. Back up again. It didn't matter. Wait, what did you just say? In this case, you're saying that the, not necessarily Ms. Frederick, but whoever was representing the government, argued that the complaint was unreliable and should not be admitted? No, my colleague. I'm sorry, Tracy Hubbard argued. My colleague on this side. Although I don't think we got much of an argument from the other side. They just said it didn't matter. And so, I mean, it would be pretty hard for anybody to argue that this police complaint had any indicia of reliability to it. The other two, a couple of quick points I want to make, is that the Dennis and Draves, I think, are fine cases. They don't affect us in any way adversely, because what they are talking about is relating to, again, just as Judge Rundell pointed out, there's no definitional section there. So saying that it relates to a common law concept, you take the broadest possible reading, fine. We've never argued otherwise. Does the categorical approach change? Does it become something different than the regular categorical approach when we're dealing with this particular subsection of 1227, the way the government has argued? I don't see how it could. And I might, just looking at the paraphernalia statute sort of analytically, you have paraphernalia is any number of, really, any object in the world that's used in connection with ingesting, manufacturing, storing, weighing, analyzing, et cetera, a controlled substance as defined under the Pennsylvania statute. Normally, when we think of a modified categorical approach, we're looking at a verbal or an intent element in a subsection of a statute. Here, what you're really looking at is the object that's used to make that ordinary object, the paper bag that could either hold a peanut butter sandwich or an illicit substance, that's what makes it illegal. So I don't see how it's different. I mean, that's what we argued in our brief, is that you would take the logic, at least, of the modified categorical approach and look to see what substance it is. And as I said, in an ordinary proper prosecution in Pennsylvania, that should be readily apparent on the record. There's no reason why that should be a mystery. And the only reason why it is here is because the magistrate did not do what he was supposed to do under the rules of criminal procedure, which was to have a plea colloquy stating on the record the facts underlying the allegations. Or it could have been that it was a plea of convenience, or it could have been any number of things. We don't really know. What we do know is that we don't have it on the record here. And with that, the only other thing I'd like to mention is that we are really, really grateful for the amount of judicial time we've gotten over this issue. We realize this is a pretty humble case, but it's extremely important, obviously, to our client. But it's also really nice to know that it's taken so seriously. Thank you. Thank you. Thank you. Thank you, counsel. Take the matter into your right hand.